**In re ESTATE OF Daniel L.R. MILLER, Deceased.**

**Appeal of Daniel M. Miller, Co-Executor of the Estate of Daniel L.R. Miller.**

Superior Court of Pennsylvania.

Argued Nov. 18, 2010.
Filed March 16, 2011.

Eric J. Purchase, Erie, for appellant.

Steven H. Seel, Pittsburgh, for Jura Corp., participating party.

Paul F. Burroughs, Erie, for Jura Trust, participating party.

BEFORE: FORD ELLIOTT, P.J., MUSMANNO, BENDER, BOWES, DONOHUE, ALLEN, OLSON, OTT and FREEDBERG, JJ.

OPINION BY OTT, J.:

Daniel M. Miller ("Co–Executor"), Co–Executor of the Estate of Daniel L.R. Miller ("Estate" and "Decedent," respectively) appeals the order of the Court of Common Pleas of Erie County, Orphans' Court Division, entered on February 10, 2009. We affirm in part, vacate in part.

The trial court issued findings of fact, which we adopt herein:

Daniel L.R. Miller died on June 16, 2006 and his Last Will was probated in the Orphans' Court Division of the Court of Common Pleas of Erie County, PA. Daniel L.R. Miller's wife, Elizabeth M. Miller, and his son, Daniel M. Miller, an attorney, were appointed as Co–Executors of the Estate of Daniel L.R. Miller. The late Daniel L.R. Miller was an attorney, who practiced law in Erie, Pennsylvania and was regarded in high esteem among his fellow members of the Erie County Bar Association. At the time of his death, Daniel L.R. Miller was one of three trustees of the Jura Trust, a trust estate created by his longtime friend, Thomas Lord, under the Thomas Lord Trust Agreement dated May 17, 1989. Additionally, Daniel L.R. Miller served as secretary and a member of the Board of Directors of Jura Corporation, and he also served on the Board of Directors of LORD Corporation.[2]

[2] The primary asset of the Jura Trust is all eight (8) voting shares of Jura Corporation. Jura Corporation is, in effect, a holding company, which owns all of the voting shares and some of the non-voting shares of LORD Corporation. LORD Corporation, a privately held corporation, is a diversified technology and manufacturing company.

As a trustee of the Jura Trust and as an officer and director of Jura Corporation, Daniel L.R. Miller had in his possession at the time of his death various books and records, which belonged to these entities and were confidential in nature. Upon his father's death, Attorney Daniel M. Miller, as Co–Executor of his father's Estate, gathered the belongings of his deceased father. Initially, Attorney Daniel M. Miller sent Jura Trust and Jura Corporation some of their records. However, as time passed, these entities realized they had not received all of their records, which were in Daniel L.R. Miller's possession. Over

the next few months, Attorney Daniel M. Miller and the two entities had been in contact with each other concerning the Jura Trust and Jura Corporation records that were in the Estate's possession. Thereafter, Attorney Daniel M. Miller did deliver more of the records to these entities. However, over a year after Daniel L.R. Miller's death, Jura Trust and Jura Corporation realized clearly that the Estate of Daniel L.R. Miller had yet to return all of the Jura Trust and Jura Corporation records that were in the Estate's possession. For over two years, the Jura Trust and Jura Corporation had continually been in contact with Attorney Daniel M. Miller and continuously asked Attorney Daniel M. Miller to identify and return all documents in the possession of the Estate, but which rightfully belonged to these two entities.

Additionally, Jura Trust and Jura Corporation realized Attorney Daniel M. Miller revealed some of the confidential information contained in their records to third parties. There are four foundations, which were created under the Thomas Lord Estate Plan and these foundations benefit certain universities and a medical institution.[3] These foundations are the owners of nonvoting stock of Jura Corporation and are also the residuary beneficiaries of the Jura Trust upon its termination.[4]

---

[3] The four foundations still in existence are the Lord Foundation of California and University of Southern California; Lord Foundation of North Carolina and Duke University; Lord Foundation of Massachusetts and Massachusetts Institute of Technology; and Lord Foundation of Ohio and Cleveland Clinic Foundation.

[4] This trial court notes that it is the foundations created under the Thomas Lord Estate Plan, which own the Jura Corporation stock and are the residuary beneficiaries of the Jura Trust, not the institutions.

On January 3, 2008, Attorney Daniel M. Miller wrote a letter to the four institutions benefited by the foundations established by the Thomas Lord Estate Plan. In his letter, Attorney Daniel M. Miller provided confidential information to these institutions, which Attorney Daniel M. Miller obtained only through his position as Co–Executor of his father's Estate. Essentially, Attorney Daniel M. Miller provided a "roadmap" to the four institutions of how to take control of LORD Corporation. The confidential information provided by Attorney Daniel M. Miller was a chart with the capital structure and number of shares of LORD Corporation.[5] In his letter to the four institutions, Attorney Daniel M. Miller states "I am writing to alert you that as a result of a recent court filing by the current trustees of the Jura Trust, you may now be able to *costlessly transform your Institutions['] non-voting minority interests in Lord Corporation into a controlling interest.*" Attorney Daniel M. Miller asked the four institutions to treat this letter as confidential. However, Duke University, one of the four institutions benefited by one of the foundations created under the Thomas Lord Estate Plan, faxed a copy of Attorney Daniel M. Miller's January 3, 2008, letter to LORD Corporation. Had the four institutions taken control over LORD Corporation, the shares of LORD stock owned by the Estate of Daniel L.R. Miller at that time would have increased in value.

---

[5] Daniel M. Miller was able to provide this confidential information to the four institutions because Daniel L.R. Miller had in his possession at the time of his death a copy of a report by Management Planning, Inc., which among other things contained an opinion of the minority interest basis fair market value of the common stock equity of LORD Corporation. The information contained in the Management Planning Inc. report was not publicly available and is regarded as highly confidential by LORD Corporation, Jura Corporation, and Jura Trust.

On October 29, 2008, Jura Corporation filed a Petition For Rule To Show Cause Why The Estate Of Daniel L.R. Miller Should Not Be Sanctioned And Ordered To Return All Property Of Jura Corporation And Why Jura Corporation Should Not Be Granted Discovery Under Local Rule 3.6.1. Thereafter, this Trial Court entered an Order stating Jura Corporation's Rule To Show Cause was returnable on January 16, 2009. Additionally, on October 29, 2008, this Trial Court ordered the Estate of Daniel L.R. Miller to answer Jura Corporation's Petition no later than November 18, 2008. This Trial Court further ordered that Jura Corporation was granted leave, pursuant to Local Orphans' Court Rule 3.6.1, to obtain discovery in this matter.[6]

---

[6] This court notes that on December 3, 2008, Jura Trust also filed a Petition For Leave Of Court to participate in the discovery of Jura Corporation and this court granted Jura Trust's Petition.

On November 17, 2008, the Estate of Daniel L.R. Miller filed Preliminary Objections to Jura Corporation's Petition For Rule To Show Cause. However, the Estate of Daniel L.R. Miller did not comply with Erie County Local Rule of Civil Procedure 1028(c)(1), and did not file its Memoranda of Law in Support of its Preliminary Objections until January 14, 2009, which was two days before the scheduled hearing on Jura Corporation's petition. Additionally, Jura Trust filed its own Petition For Rule To Show Cause Why The Estate Of Daniel L.R. Miller Should Not Be Sanctioned And Ordered To Return All Property Of Jura [Trust] And Why Jura [Trust] Should Not Be Granted Discovery Under Local Rule 3.6.1 On November 25, 2008.[7] However, the Estate of Daniel L.R. Miller never filed Preliminary Objections to Jura's Trust's Rule To Show Cause. Therefore, after a hearing on

the Estate's Preliminary Objections held on January 15, 2009, this Trial Court overruled the Estate of Daniel L.R. Miller's Preliminary Objections since the Estate did not comply with Erie County Local Rule of Civil Procedure 1028(c)(1). Thus, the hearing on Jura Trust and Jura Corporation's Petition For A Rule To Show Cause Why The Estate Of Daniel L.R. Miller Should Not Be Sanctioned And Ordered To Return All Property Of Jura Corporation And Why Jura Corporation Should Not Be Granted Discovery under Local Rule 3.6.1 occurred as scheduled on January 16, 2009.

---

[7] Since the Jura Trust's Rule To Show Cause raised the same issues and was almost identical in form to Jura Corporation's Rule To Show Cause, this Trial Court made Jura Trust's Rule To Show Cause returnable on January 16, 2009, as well.

At the January 16, 2009 hearing on Jura Corporation's and Jura Trust's Petitions, Attorney Daniel M. Miller stated he believed he had a right to keep copies of the information in his father's possession at the time of his death in order to probate his father's Estate. Attorney Daniel M. Miller also stated his father never had discussions with him concerning the confidential information of Lord Corporation, Jura Corporation, or Jura Trust. Additionally, Attorney Daniel M. Miller stated his father never provided this information to the four institutions supported by the foundations created under the Thomas Lord Estate Plan; however, Attorney Daniel M. Miller stated he believed he had a duty as Co-Executor of his father's Estate to disseminate this information to the four institutions that are supported by the nonprofit foundations, which own Jura Corporation's nonvoting common stock and which are the residual beneficiaries of the Jura Trust.[8] Furthermore, Attorney Daniel M. Miller stated he used the

confidential information from the Management Planning, Inc. report in his letter to the four institutions.

[8] Again, this Trial Court notes it is the foundations created under the Thomas Lord Estate Plan, which own the Jura Corporation stock and are the residuary beneficiaries of the Jura Trust, not the institutions to which Daniel M. Miller wrote.

On February 10, 2009, This Trial Court entered an Order supported by Findings of Fact and Conclusions of Law. In its order, this Trial Court ordered Attorney Daniel M. Miller, as Co-Executor of the Estate of Daniel L.R. Miller, to itemize and return all records in the possession of the late Daniel L.R. Miller to the Jura Corporation and Jura Trust, which were in Daniel L.R. Miller's possession at the time of his death due to his position as trustee of the Jura Trust and officer/director of the Jura Corporation. Additionally, this Trial Court ordered the Estate of Daniel L.R. Miller to reimburse $43,498.50 to Jura Corporation and $22,264.47 to Jura Trust for the cost of their attorneys' fees for having to prepare, present, and bring their petitions since this Trial Court found, as stated in its findings of fact and conclusions of law, that it was the Estate of Daniel L.R. Miller's unreasonable actions, which caused Jura Trust and Jura Corporation to bring their petitions.

Trial Court Opinion, May 27, 2009, pp. 3–7 (footnotes in block quote). Co-Executor filed a timely appeal. This Court granted *en banc* review on March 5, 2010 and this matter is now ready for resolution.

Co-Executor raises seven issues on appeal.[1]

1. Whether the trial court's legal conclusions that (1) Petitioners, Jura Corporation and Jura Trust had standing to file their claims in Orphans' Court, and (2) the trial court had jurisdiction to adjudicate such claims, were supported by applicable law.

2. Whether the trial court's legal conclusion that the Estate's request for a jury trial was untimely was supported by applicable law.

3. Whether the trial court's order striking portions of the deposition of Co-Executor was supported by applicable law.

4. Whether the trial court's legal conclusion that the Co-Executor's duty to disclose the actual value of the Jura Trust to the Interested Parties was not paramount to the Estate's duty of confidentiality owed to Jura Corporation and the Jura Trust was supported by applicable law.

5. Whether the Trial court's legal conclusions that (1) the Public Charities which control the Lord Foundations were "third parties," and were not Interested Parties with respect to the pending audit of the Trustees' Account and (2) the Successor Trustees had not waived any distinctions between disclosure of truthful information to the Lord Foundations and the Public Charities by previously directing the misleading representations as to the value of the Jura Trust to both the Lord Foundations' and the Public Charities and identifying both in such verified pleadings as "Interested Parties" were supported by applicable law.

6. Whether any facts of record support the trial court's finding that the Estate would benefit if the Lord Foundations' interests in Jura Corporation were valued on a majority interest basis as suggested by the Co-Executor in his January 8, 2008 Disclosure letter.

1. We have numbered and placed the issues in chronological order as they occurred during the course of the litigation.

7. Whether the trial court's legal conclusion that it had authority under 42 Pa. C.S. § 2503(7) to award sanctions against the Estate for conduct which occurred prior to the filing of the petitions herein was supported by applicable law.

■■■ The standard of review is well settled and requires that we be deferential to the findings of the Orphans' Court. Specifically,

> When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the [court] relied are palpably wrong or clearly inapplicable, we will reverse the [court's] decree."

*In re Ware*, 814 A.2d 725, 731 (Pa.Super.2002) (internal citations omitted).

■■■ The initial issue in this appeal concerns jurisdiction. First, whether the Orphans' Court possessed jurisdiction to adjudicate the claims brought against the Estate by Jura Corporation and Jura Trust. Secondly, whether Jura Corporation or Jura Trust has standing to bring this action in Orphans' Court.

The jurisdiction of the Orphans' Court is controlled by statute, 20 Pa.C.S § 711.[2]

**§ 711. Mandatory exercise of jurisdiction through orphans' court division in general**

Except as provided in section 712 (relating to nonmandatory exercise of jurisdiction through the orphans' court division) and section 713 (relating to special provisions for Philadelphia County), the jurisdiction of the court of common pleas over the following shall be exercised through its orphans' court division:

**(1) Decedents' estates.** The administration and distribution of the real and personal property of decedents' estates and the control of the decedent's burial.

. . .

**(3) Inter vivos trusts.**—The administration and distribution of the real and personal property of inter vivos trusts, and the reformation or setting aside of any such trusts, whether created before or after the effective date of this chapter, except any inter vivos trust jurisdiction of which was acquired by the court of common pleas prior to January 1, 1969 unless the president judge of such court orders the jurisdiction of the trust to be exercised through the orphans' court division.

"Inter vivos trust" means an express trust other than a trust created by a will, taking effect during the lifetime or at or after the death of the settlor.

. . .

**(17) Title to personal property.** The adjudication of the title to personal property in the possession of the personal representative, or registered in the name of the decedent or his nominee, or alleged by the personal representative to have been in the possession of the decedent at the time of his death.

20 Pa.C.S. § 711(1), (3)[3], (17).

The petitions brought against the Estate allege Co–Executor was in possession of

---

**2.** The short title of Title 20 of the Pennsylvania Consolidated Statutes is the Probate, Estates and Fiduciaries Code ("PEF Code").

**3.** Jurisdiction pursuant to Section 711(3) is available to the Trustees of the Jura Trust established by the Thomas Lord Trust Agreement, dated May 17, 1989.

Jura Corporation/Trust property, specifically documents which had been in the custody of Decedent at the time of his death because of his position as a Trustee of the Jura Trust and officer and director of Jura Corporation. Co–Executor testified he was entitled to retain the documents "because it is my understanding that it is my obligation [as a Co–Executor] to file my father's account and discharge him and it's not the successor trustees." N.T., 1/16/2009, at 146. He testified that only after the Court discharged Decedent as Trustee of the Jura Trust would he return the documents. *Id.* at 145. As a result of this testimony by a personal representative of an estate, the Orphans' Court clearly has jurisdiction pursuant to Section 711(1) and (3) of the PEF Code.[4] Co–Executor's claim that the Orphans' Court did not have jurisdiction to adjudicate the claims brought against the Estate fails.

■ Co–Executor next argues that neither Jura Corporation nor Jura Trust has standing to bring this action in Orphans' Court. Co–Executor claims the lack of a citation[5] on the October 29, 2008 petition for a rule to show cause is fatal to the establishment of jurisdiction over him. We disagree.

"Proceeding on petition shall be by citation to be awarded by the Court upon application of petitioner in any case where jurisdiction over the person of the respondent is required and **has not previously been obtained.**" Pa. O.C. Rule 3.5. (emphasis added). Prior to the issues herein,

Co–Executor petitioned for probate and was granted letters testamentary for the Estate on July 3, 2006. Upon the grant of letters, Co–Executor became a fiduciary of the Estate. Section 711(12) of the PEF Code grants the Orphans' Court mandatory jurisdiction over fiduciaries.

> **(12) Fiduciaries.** The appointment, control, settlement of the accounts of, removal and discharge of, and allowance to and allocation of compensation among, all fiduciaries of estates and trusts, jurisdiction of which is exercised through the orphans' court division, except that the register shall continue to grant letters testamentary and of administration to personal representatives as heretofore.

20 Pa.C.S. § 711(12). As the Orphans' Court had continuing jurisdiction over Co–Executor, there was no need for the issuance of a citation.[6]

Moreover, Jura Corporation and Jura Trust had standing as aggrieved parties because of the refusal of the Co–Executor to relinquish possession of their documents. Co–Executor's claim that Jura Corporation and Jura Trust did not have standing fails.

■ Co–Executor's second issue concerns whether the trial court erred in denying his request for a jury trial.

On October 29, 2008, the trial court issued a rule returnable upon the Estate scheduling a January 16, 2009 hearing on the merits of the Jura Corporation and Jura Trust petitions. The hearing was

---

4. The trial court found it had jurisdiction pursuant to Section 711(17). However, because there is not a dispute as to Jura Corporation and Jura Trust having title to the documents, subsection (17) is not applicable.

5. A citation is awarded by the Orphans' Court upon application of a party in interest and directs the party named therein to file a complete answer, under oath, and within a desig-

nated time period, to the averments of the petition attached to the citation. *See* 20 Pa. C.S. § 764.

6. The trial court found it had jurisdiction pursuant to Section 711(17). However, because there is not a dispute as to Jura Corporation and Jura Trust having title to the documents, subsection (17) is not applicable.

held and four days later, on January 20, 2009, Co–Executor made a written demand for a jury trial.

■ It has long been settled in case law that the right to a jury trial in the Orphans' Court is at the discretion of the court. *See In re Schwoyer's Estate*, 288 Pa. 541, 136 A. 798, 800 (1927) (granting of jury trial in a claim against an estate is within the discretion of the Orphans' Court.). The PEF Code retains the discretionary aspect of the granting of a jury trial. However, it further demands the party requesting comply with specific requirements.

**§ 777. Right to jury trial; discretion of orphans' court division.**

. . .

**(d) Waiver of right.**—A person desiring a trial by jury shall make demand therefore in writing at least ten days prior to the initial hearing before the orphans' court division or; if the initial hearing is dispensed with as provided in section 778(b) of this code (relating to combined hearings and trials) then at least ten days prior to the trial. The right to trial by jury is waived if such demand is not so made or, after having been made, the person claiming the right fails to appear.

20 Pa.C.S. § 777(d).

The trial court concluded that Co–Executor's failure to comply with Section 777(d) of the PEF Code resulted in the waiver of the Estate's right to request a jury trial. After review of the record, we agree with the trial court. We conclude the Co–Executor's failure to comply with the requirements of Section 777(d) constituted a waiv-

er of his right to have the Orphans' Court consider whether to permit a jury trial in this matter. Co–Executor's second issue fails.

■ Co–Executor's third issue alleges the trial court erred when it ordered the striking of corrected portions of the deposition of Co–Executor. On January 6, 2009, Co–Executor submitted to an oral deposition in this matter. At the time of the deposition, Co–Executor reserved the right to inspect, read, and sign the transcription pursuant to Pa.R.C.P. 4017(c). On January 9, 2009, the court reporter forwarded to Co–Executor's counsel a copy of the deposition transcript. On February 9, 2009, Co–Executor replied, submitting a two-page amendment to the transcript. A hearing was held and on April 22, 2009, the court issued an order striking the corrections because the changes would substantively alter Co–Executor's statement. Moreover, the court held Co–Executor did not state the reason for his changes as required by Pa.R.C.P. 4017(c).[7]

The original record does not contain either a copy of the deposition in question or a transcript of the hearing, which occurred some time in April 2009 for our review.[8] It is the appellant's duty to request and insure transcripts of hearings are prepared and transmitted to this Court. *See* Pa.R.A.P. 1911(a). Documents not included in the record technically do not exist and therefore, pursuant to Pa. R.A.P. 1911(d) we consider this issue waived. Pa. R.A.P. § 1911(d). Co–Executor's third issue fails.

In his fourth issue, Co–Executor claims the trial court erred in concluding the Estate's duty of confidentiality owed to Jura

---

**7.** "Any changes in form or substance, which the witness desires to make, shall be entered upon the deposition by the person before whom it was taken with a statement of the reasons given by the witness for making the changes." Pa.R.C.P. 4017(c).

**8.** The original record contains only transcripts of hearings held on October 29, 2008, December 30, 2008, January 15, 2009, and January 16, 2009. The original record contains only the January 6, 2009 deposition transcript of Donna Buseck.

Corporation and the Jura Trust was paramount to his duty, as Co–Executor, to disclose the actual value of the Jura Trust to the interested parties. We first examine the latter part of this issue.

Co–Executor cites no provision of the Trust Agreement that designates the Public Charities as beneficiaries of the Jura Trust. A trust beneficiary is "[a] person that: (1) has a present or future beneficial interest in a trust, vested or contingent." 20 Pa.C.S. § 7703(1). In fact, Article II § 3 of the Trust Agreement[9] indicates only the Lord Foundations are entitled to equal distributions upon termination of the Trust, hence they are residuary beneficiaries of the Jura Trust. The Public Charities are **not** beneficiaries. Therefore, even if the Co–Executor succeeded to some duty of loyalty or candor owed by the Decedent (which he did not), he owed it to the Lord Foundations, not the Public Charities. 20 Pa.C.S. § 7772 ("A trustee shall administer the trust solely in the interests of the beneficiaries."). Therefore, we conclude the Co–Executor had no duty to the Public Charities.[10]

 Turning to an examination of the Estate's duty of confidentiality to the Jura Trust and Jura Corporation, we note there is no statute or case law directly relevant to this issue. We begin with Section 3324 of the PEF Code, which provides:

> The personal representative of the estate of a deceased fiduciary or the guardian of an adjudged incapacitated

fiduciary by reason of his position shall not succeed to the administration of, or have the right to possess, any asset of an estate which was being administered by the deceased or incapacitated fiduciary, except to protect it pending its delivery to the person entitled to it.

20 Pa.C.S. § 3324; *see* 20 Pa.C.S. § 7767 cmt.

Section 3324 explicitly prohibits the Co–Executor from succeeding to any powers or duties the Decedent had as a fiduciary to the Jura Trust and Jura Corporation. 20 Pa.C.S. § 3324. The Co–Executor's only duty upon beginning administration of the estate was to protect the property of the Jura Trust and Jura Corporation pending its return to the respective owners. *Id.* By analogy to other PEF Code sections, a fiduciary who has resigned or been removed must expeditiously return estate or trust property, "together with all books, accounts and papers relating thereto." *See* 20 Pa.C.S. §§ 3183, 7766, 7767. We conclude that within the Co–Executor's statutory duty to protect and return the trust and corporate property is an implied duty to maintain the confidentiality of the information. *See* 20 Pa.C.S. § 3324. Therefore, Co–Executor's implied duty of confidentiality to the Jura Trust and Jura Corporation in protecting and returning their property was greater than his alleged, but nonexistent, duty to the Public Charities. Co–Executor's fourth issue fails.[11]

9. R.R. 428a.

10. Co–Executor's reliance on Section 3373 of the PEF Code is misguided considering the operation of Section 3324, which is discussed hereafter in this opinion.

11. We acknowledge Section 3324 creates a permissive right of the Co–Executor to file an account for the Decedent:

> The account of the deceased or incapacitated fiduciary may be filed by the fiduciary of

his estate and it shall be filed if the court shall so direct. The court may direct the fiduciary of a deceased or incapacitated fiduciary to make the distribution and to make the transfers and assignments necessary to carry into effect a decree of distribution.

Section 3324 only requires a person in the Co–Executor's position to file an account when a court directs it. Because of the deaths of Jura Trust trustees, Decedent and Donald M. Alstadt, the successor trustees of the Jura Trust were in the best position to

■ In his fifth issue, Co–Executor argues the trial court erred in concluding (1) the Public Charities were third parties and not interested parties with respect to the audit of the Trustees' account, and (2) the successor trustees had not waived any distinctions between disclosure of truthful information to the Lord Foundations and the Public Charities by previously directing misleading representations as to the value of the Jura Trust to both the Lord Foundations and Public Charities and identifying both in verified pleadings as interested parties.

The audit of the Jura Trust is not part of the present Estate litigation and is an entirely separate case. Co–Executor attempts to justify his dissemination of the confidential information of Jura Trust and Jura Corporation by concluding that any notice of the audit that may have been given to the Public Charities is a recognition of their status as a beneficiary of the Jura Trust.[12] The Public Charities are not beneficiaries of the Jura Trust in the legal meaning of the word, although they may receive contributions from the Lord Foundations. Only the Lord Foundations' four separate legal entities are the residuary beneficiaries of the Jura Trust. We reject Co–Executor's argument.

We likewise reject the Co–Executor's arguments that we should look through the

Lord Foundations and conclude the Public Charities are the real parties in interest. The Lord Foundations were intentionally inserted in between the Jura Trust and the Public Charities for reasons we can only surmise, presumably tax related, and we will not ignore the corporate structure.

Regarding Co–Executor's waiver argument, he cites no law supporting his argument and apparently asks us to fashion a new rule of law. We will not develop Co–Executor's argument for him. *Bombar v. W. Am. Ins. Co.*, 932 A.2d 78, 93 (Pa.Super.2007). We instead adopt the sound reasoning of the trial court. Trial Court Opinion, 5/27/2009, at 17–18. Co–Executor's fifth issue fails.

In his sixth issue, Co–Executor claims the trial court erred in finding the facts supported a conclusion that the Estate would benefit if the Lord Foundations' interests in Jura Corporation were valued on a majority interest basis as suggested by the Co–Executor in his January 8, 2008 Disclosure Letter. We agree with the sound reasoning of the trial court that this issue is immaterial and any error in so finding was harmless. Trial Court Opinion, 5/27/2009, at 13.

■ The final issue is whether the trial court erred when it awarded sanctions against the Estate pursuant to 42 Pa.C.S. § 2503(7). We agree.

prepare an Account for Audit and Adjudication in order for both decedents' estates to be discharged. Therefore, when the successor trustees of the Jura Trust filed their own account, the Co–Executor's exercise of his permissive right under Section 3324 was redundant, impractical, and resulted in the dismissal of the Estate's account by the Honorable Donald Ziegler.

12. Furthermore, we note Co–Executor fell far short in proving the Public Charities actually received any documentation relating to the trust audit pursuant to Pa. O.C. Rule 6.3. The certificates of service provided by the Co–Executor in the reproduced record (and

which are not in the original record) do not list addresses for the Public Charities separate from the Lord Foundations. Rather, there are four addresses listed for the Lord Foundations, with the titles: "Lord Foundation of Massachusetts and Massachusetts Institute of Technology," "Lord Foundation of California and University of Southern California," "Lord Foundation of Ohio and Cleveland Clinic Foundation," and "Lord Foundation of North Carolina and Duke University." Co–Executor's argument assumes, without any proof, that, for instance, the Massachusetts Institute of Technology received notice of the trust audit and not just the Lord Foundation of Massachusetts.

The trial court invoked Section 2503(7) as authority for awarding counsel fees to Jura Corporation and Jura Trust. However, Section 2503(7) is severely limited in its scope and provides that counsel fees may be awarded as, "the taxable costs of the matter [to] ... [a]ny participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter." 42 Pa.C.S. § 2503(7). The trial court reasoned,

> Since this Trial Court specifically has found the Estate's conduct, lasting over two years, of not returning property in the possession of Daniel L.R. Miller at the time of his death, which clearly belonged to Jura Trust and Jura Corporation was dilatory, obdurate, and vexatious conduct, the trial court's awarding counsel fees was proper and necessary.

Trial Court Opinion, 5/27/2009, at 10. The trial court awarded counsel fees to Jura Trust and Jura Corporation for costs incurred in the period prior to October 29, 2008.

The court erred when it considered the actions of the Estate rather than those of the Co-Executor **individually**. The testimony of the Co-Executor indicates he was acting without express consent of the other co-executor. Specifically, when asked by the court whether his mother, the other co-executor of the Estate, had signed everything and was aware of everything he was doing on behalf of the Estate, Co-Executor testified, "[t]he answer to your question is she has not signed the documents. Executors are not required to act jointly." N.T., 1/16/2009, at 160. Co-Executor, an attorney, testified it was his understanding of Pennsylvania law that he had full authority to act on behalf of the Estate without the other co-executor. *Id.* Co-Executor is wrong. *See Fesmyer v. Shannon*, 143 Pa. 201, 22 A. 898, 902 (1891) (The authority of executors is joint and several). As a result, the actions of Co-Executor should be examined separately from the actions of the Estate. The proper standard for reviewing the performance of an executor is,

> [i]n the performance of his fiduciary duties, the executor must exercise the judgment, skill, care and diligence that a reasonable or prudent person would ordinarily exercise in the management of his or her own affairs.
>
> When the executor of an estate fails to fulfill his fiduciary duty of care, the court may impose a surcharge against him. A surcharge is a penalty imposed to compensate the beneficiaries for loss of estate assets due to the fiduciary's failure to meet his duty of care; however, a surcharge cannot be imposed merely for an error in judgment. Our Supreme Court has held that a standard of negligence is applied when evaluating whether an executor's management of an estate warrants a surcharge.
>
> Before the court can impose a surcharge, it must give the executor an opportunity to be heard. Ordinarily, the party seeking to surcharge an executor bears the burden of showing a failure to meet the required standard of care. However, the burden shifts to the executor to present exculpatory evidence when a patent error has occurred or when a significant discrepancy appears on the face of the record.

*In re Estate of Westin*, 874 A.2d 139, 144–145 (Pa.Super.2005) (internal citations and quotations omitted). We conclude the trial court erred as a matter of law and vacate the sanctions imposed upon the Estate.

Accordingly, we affirm in part and vacate in part.