J-S35028-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: PHYLLIS J. PROPERT, AN ALLEGED INCAPACITATED PERSON | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: PHYLLIS J. PROPERT | No. 3428 EDA 2015 |

Appeal from the Decree Entered October 9, 2015
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s): 2015-X3127

BEFORE: FORD ELLIOTT, P.J.E., BENDER, P.J.E., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED JUNE 14, 2016**

Phyllis J. Propert (Appellant), through legal counsel appointed by the orphans' court, appeals from the October 9, 2015 final decree that adjudicated her to be a totally incapacitated person and appointed a plenary permanent guardian of her person and estate. We affirm.

On appeal, Appellant raises the following issues for our review:

A. Whether the Montgomery County Orphans' Court erred in failing to appoint counsel to represent Phyllis Propert in the Petition for the Appointment of a Plenary Guardian of her Person and of her Estate[?]

B. Whether the Montgomery County Orphans' Court erred in allowing medical testimony to be accepted by Written Interrogatories as allowed by Local Rules in uncontested matters[?]

C. Whether the Montgomery County Orphans' Court erred in adjudicating Phyllis Propert as an Incapacitated Person without having received evidence on whether a less restrictive alternative to a plenary guardianship of the person and of the estate existed[?] 20 Pa.C.S.A. § 5502.

D.   Whether the Montgomery County Orphans' Court erred in failing to consider whether Phyllis Propert could understand and execute a power of attorney[?]  20 Pa.C.S.A. § 5601.

E.   Whether the Montgomery County Orphans' Court erred in failing to consider whether Phyllis Propert could execute an Advanced Directive for Healthcare or Living Will[?]  20 Pa.C.S.A. § 5422.

F.   Whether the Montgomery County Orphans' Court erred in failing to consider whether Phyllis Propert could execute a Healthcare Power of Attorney[?]  20 Pa.C.S.A. § 5452.

Appellant's brief at 2.

In our review of this matter, we are guided by the following:

When an appellant challenges a decree entered by the Orphans' Court, our standard of review "requires that we be deferential to the findings of the Orphans' Court." *In re Estate of Miller*, 18 A.3d 1163, 1169 (Pa. Super. 2011) (en banc).

[We] must determine whether the record is free from legal error and the court's factual findings are supported by the evidence.  Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.  However, we are not constrained to give the same deference to any resulting legal conclusions.  Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

*Id.* (alterations and citation omitted).

*In re Estate of Brown*, 30 A.3d 1200, 1206 (Pa. Super. 2011).

We have reviewed the certified record, the briefs of the parties, the applicable law, and the thorough, well-crafted opinion of the Honorable Stanley R. Ott of the Court of Common Pleas of Montgomery County, dated

December 16, 2015. We conclude that Judge Ott's well-reasoned opinion properly disposes of the issues presented by Appellant on appeal and we discern no abuse of discretion or error of law. Accordingly, we adopt Judge Ott's opinion as our own and affirm the October 9, 2015 decree on that basis.

Decree affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/14/2016

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

NO. 2015-X3127

IN RE: **PHYLLIS J. PROPERT**
An Incapacitated Person

2015-X3127.1.4.2.3          FilingID: 1786557
1925(a) Opinion
Receipt # Z213600                     Fee $0.00
D. Bruce Hanes. Esq. - MontCo Register of Wills
12 16 2015 1:00:37 PM - PROPERT. PHYLLIS J

**OPINION**

OTT, J.                                                December 16, 2015

Phyllis J. Propert ("Ms. Propert") has appealed this Court's adjudication determining her

to be an incapacitated person

## PROCEDURAL HISTORY

On September 10, 2015, Elaine C. Priestley of Exeter, New Hampshire, the twin sister of

Ms. Propert filed a petition seeking to have Ms. Propert adjudicated an incapacitated person.

The petition alleged that Ms. Propert had been living at Wesley Enhanced Living, a senior

residential facility in Hatboro, Montgomery County, since March of 2015. The petition noted

that Ms. Propert was single and that the petitioner was her next-of-kin along with two nephews

and a niece, all of whom consented to the petition. The petition further alleged that Ms. Propert

had long suffered from paranoia which was moderate and progressive, and that her affairs had

been handled since March 29, 2007 by Deborah L. Klock, R.N, of DLK Managed Care

Solutions, Inc. Ms. Klock was initially hired pursuant to a written contract and, in March of

2015, was appointed Ms. Propert's agent under a general durable power of attorney. The petition

was said to be necessary because following a hospitalization in June of 2015, Ms. Propert

1

became suspicious and paranoid about Ms. Klock's actions and thwarted her efforts of assistance. A hearing was scheduled before the undersigned for October 9, 2015.

Petitioner's seven-day letter sent pursuant to 20 Pa.C.S.A. §5511(a) advised that Ms. Propert would be present for the hearing and "that it may serve no useful purpose for the appointment of independent counsel."[1] The proof of service of the citation, filed on October 6, 2015, reflected personal service by petitioner's counsel on Ms. Propert at her residential facility on September 19, 2015.

The hearing proceeded as scheduled on October 9, 2015. At the outset, the undersigned introduced himself to Ms. Propert and then asked her if she knew why she was there. She responded it was for the purpose of naming her power of attorney. When questioned who that was, she replied "Sam Glantz," her deceased father. (N.T. 3-4). When the court followed up with questions about her father, she advised he was still alive, living in Rydal, and she had last seen him approximately three months prior in Abington when he simply appeared while she was eating. (N.T. 6-7).

Medical testimony in the form of sworn answers to interrogatories was provided by Andrew S. Poulshock, D.O., a physician licensed for 25 years. He confirmed that Ms. Propert was born December 8, 1934 and was then 80 years of age. He testified he had examined her on five occasions between March and August of 2015, and was her current physician. Her diagnoses included: dementia, end-stage renal disease (ESRD) and diabetes mellitus (NIDDM).

---

[1] This letter was faxed to the undersigned on the evening of October 7, 2015, in violation of the statute. Nevertheless, because it was suggested that the appointment of counsel was unnecessary, no prejudice resulted.

2

He explained that Ms. Propert was unable to answer simple questions and was confused and paranoid. He said she becomes easily agitated, unrealistic and unable to relate to the real world. He confirmed that Ms. Propert was then living in a personal care facility where everything is supervised; and he stated that neurology and psychiatric consultations were pending. Ultimately, he concluded that Ms. Propert was unable to make reasonable realistic decisions and that her incapacities will increase as her dementia progresses.[2]

Deborah L. Klock then testified. Ms. Klock is the principal of DLK Managed Care Solutions, Inc., which provides care management services to disabled and elderly individuals, including professional guardianship and agency services pursuant to powers of attorney. She is well known to the Montgomery County Orphans' Court as she presently serves as guardian in approximately 25 cases here. Ms. Klock became involved with Ms. Propert in 2007 at the behest of the instant petitioner. Ms. Klock testified that her relationship with Ms. Propert was "intermittent" and explained:

> Periodically, [Ms. Propert] would feel that she did not need my services, and I would honor that and, essentially, would periodically hear from her sister if there was a concern...The sister would report if there was a particular incident that had happened, could I go and check on Ms. Propert. So I would pop in to see her intermittently."

(N.T. 18-19.) As to how she came to be agent under Ms. Propert's power of attorney, she testified that:

> Ms. Propert's home environment would periodically require extensive cleaning, and they'd have to bring in individuals to exterminate, and this continued to happen over a period of time. I don't know how long the facility had been dealing with it, several years was my impression. But they had finally reached a point where they were going to evict her. At that time, the sister, Ms. Priestley, called me and said can you investigate and figure out what we can do for Phyllis so that she can remain there. And it was the

---

[2] The court's summarization of Dr. Poulshock's testimony appears at pp. 10-12 of the notes of testimony.

impression of the Wesley Enhanced Living…unless she were to move to their personal care community, they would not allow her to remain in the independent apartment." (N.T. 20-21). Ms. Klock became Ms. Propert's authorized representative in dealings with the residential facility and used her power of attorney to handle her finances. She acted in that manner until Ms. Propert revoked the power.

Ms. Klock stated that, as of the date of the hearing, Ms. Propert's outstanding bills totaled $18,783.29. Ms. Klock said she is satisfied and very impressed with the care that Ms. Propert is receiving at Wesley Enhanced Living. She opined that this is a good placement for Ms. Propert because Wesley also has a skilled nursing facility should Ms. Propert require that level of care. Ms. Klock stated she perceived no essential difference between her former role as agent and her proposed role as guardian. (N.T. 28, 30).

The Court then re-engaged Ms. Propert in conversation. She acknowledged that Ms. Klock had helped her in the past but denied that she was presently looking after her best interests. Ms. Propert insisted that she had been poisoned by her cousin, Wayne, and she was upset that he was walking free and never arrested. She insisted he had come to her house at night and poisoned a can of Coke, and by drinking it, she experienced kidney failure. (N.T. 32-33). When the undersigned told Ms. Propert that he had known Ms. Klock for a long time and trusted her, she responded: "It helps to know that you trust her." (N.T. 34). When it was suggested that her petitioning sister cares about her a lot, Ms. Propert responded "She's trying to murder me." (N.T. 35). As the proceedings were drawing to a close, Ms. Propert again suggested that Sam Glantz, her deceased father, was her choice to be agent under her power of attorney. (N.T. 36).

After the October 9, 2015, proceeding and the entry of the court's decree finding Ms. Propert an incapacitated person, she wrote to the undersigned stating that she wished to appeal.

Accordingly, on October 30, 2015, Linda M. Hee, Esquire, was appointed as her counsel and timely filed the instant appeal.

The statement of matters complaint of filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) contains six separate paragraphs raising the following issues: 1.) The court erred by failing to appoint counsel for Ms. Propert; 2.) The court erred by permitting medical testimony to be provided in a written format; 3.) The court erred because it issued an adjudication without having received evidence as to whether a less restrictive alternative to plenary guardianship was available; 4.) The court erred by failing to consider whether Ms. Propert could understand and execute and power of attorney; 5.) The court erred in failing to consider whether Ms. Propert could execute an advanced directive for health care or living will; and 6.) the court erred in failing to consider whether Ms. Propert could execute a health care power of attorney.

## DISCUSSION

Regarding the criticism of the failure to appoint counsel, there was no indication prior to the hearing that counsel was necessary. At the hearing, Ms. Propert said nothing remotely suggesting she wanted counsel. She ultimately conceded that she needed the assistance of an agent under a power of attorney. Although it was clear she preferred her deceased father to be her agent, that fact, standing alone, did not turn the proceeding into a contest and thus require the appointment of counsel.

The use of written medical testimony in guardianship proceedings is expressly authorized by Section 5518 of the PEF Code. Dr. Poulshock's verified answers to written interrogatories were the equivalent of a deposition and provided comprehensive detail as to Ms. Propert's

5

incapacities. Moreover, the court's ability to observe Ms. Propert and test her abilities with questions revealed no inconsistencies with the doctor's testimony and provided no basis for impeaching the validity of his conclusions.

Regarding the lack of inquiry into a less restrictive alternative to guardianship, the court heard testimony that the power of attorney given to Deborah Klock was revoked as a result of Ms. Propert's paranoia. It appeared unlikely that Ms. Propert had sufficient capacity at the time of the hearing to execute another valid power of attorney and, even if she had, her history of revoking such documents, if repeated, would have jeopardized her ability to stay in the personal care facility providing her with 24/7 care.

The last two issues which criticized the court's failure to consider whether Ms. Propert could execute a living will or health care power of attorney are of no practical consequence. As long as Ms. Propert is capable of giving voice to her wishes regarding end-of- life decisions, the guardian must honor them[3]. Moreover, it is customary for a guardian to consult any interested family members prior to making significant medical decisions, and here, where Ms. Propert's twin has long looked out for her best interests, that safeguard is in place.

Sadly, this is a case of an 81 year-old woman no longer capable of making her own decisions to meet essential requirements for her physical health and safety or the management of her financial circumstances. The well-regarded and experienced professional guardian, Deborah Klock, is the unanimous choice of Ms. Propert's family, all of whom want only what is best for her. The final decree should be affirmed.

---

[3] Section 5521 of the incapacitated persons' statute provides: "It shall be the duty of the guardian of the person to assert the rights and best interests of the incapacitated person. Expressed wishes and preferences of the incapacitated person shall be respected to the greatest possible extent."

BY THE COURT:

_____ J.

Copy of the above mailed
December 16, 2015, to:
Mary E. Podlogar, Esquire
Linda M. Hee, Esquire
Deborah L. Klock, R.N.

By _____