J. A25004/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| E. PAUL PALOSKEY, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | No. 732 MDA 2016 |
| | : | |
| JENNIFER A. HAGERMAN | : | |

Appeal from the Order Entered April 21, 2016,
in the Court of Common Pleas of Clinton County
Orphans' Court Division at No. 2014-00099

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, J., AND STEVENS, P.J.E.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED JANUARY 25, 2017**

E. Paul Paloskey appeals the order of the Court of Common Pleas of Clinton County that vacated the appointment of Justin K. Houser, Esq., as counsel for Jennifer A. Hagerman ("appellee"), surcharged appellee in the amount of $1,214.43 payable to appellant in his capacity as attorney-in-fact for Edward P. Paloskey, and ordered appellee to reimburse Clinton County in the amount of $3,688.58 for attorney's fees paid by Clinton County on behalf of appellee less a credit of $2,071.17 for reimbursement monies already paid to Clinton County by appellee.

The background and relevant findings of fact as found and recounted by the trial court are as follows:

---

* Former Justice specially assigned to the Superior Court.

Edward P. Paloskey and Donna C. Paloskey each executed a general power of attorney naming each other, as well as their daughter, Carol A. Folkenroth, and their granddaughter, [appellee] as attorneys-in-fact.

The power of attorney executed on June 9, 2011, was revoked on July 30, 2012.

On May 20, 2014, [appellant], son of Edward P. Paloskey and Donna C. Paloskey, filed a petition to obtain an accounting from [appellee].

On October 6, 2014, [appellee] filed a collection of documents which [appellee] deemed to be a response to the Court's Order to file a formal accounting.

On January 16, 2015, the Court appointed Justin K. Houser, Esquire to represent [appellee] and to assist in the preparation of a formal accounting with the Court reserving the right to assess [appellee] for reimbursement to Clinton County.

In response to the Order of this Court and with the assistance of court-appointed counsel, Justin K. Houser, Esquire, [appellee] filed her second accounting on February 27, 2015.

On March 20, 2015, exceptions to the accounting of [appellee] were filed by [appellant].

On October 20, 2015, a hearing was held on the exceptions where the Court received testimony from [appellant], [appellee], Isaac Hagerman, Clair Folkenroth, Beula Hauman, Robert Huxta, and Mary George Rhone.

. . . .

**FINDINGS OF FACT**

. . . .

3.    [Appellant] is the uncle of [appellee].

. . . .

6.    The power of attorney executed June 9, 2011 by Edward P. Paloskey and Donna C. Paloskey included an "acknowledgement of Power of Attorney" whereby [appellee] acknowledged that she had the following obligations:

   (1)   I shall exercise the powers for the benefit of the principal.

   (2)   I shall keep the assets of the principal separate from my assets.

   (3)   I shall exercise reasonable caution and prudence.

   (4)   (4)   I shall keep a full and accurate record of all actions, receipts, and disbursements on behalf of the principal.

. . . .

8.    [Appellee] did not read the Acknowledgement of Power of Attorney and did not follow the clearly stated obligations.

9.    [Appellee] filed an accounting on October 6, 2014 which failed to include any receipts for disbursements made on the part of the principals.

. . . .

20.    When [appellee] relocated to live with her grandparents, she was accompanied by her husband, her step-daughter and her daughter.

21.    [Appellee], her family and her grandparents jointly occupied her grandparent's [sic] residence.

22.    [Appellee's] grandparents were both undergoing dialysis.

23.    [Appellee's] grandmother was unable to operate an automobile and [appellee's] grandfather had not exercised his driving privileges in some time.

24.    [Appellee] assumed the responsibility of running errands, buying groceries and other household items as well as transporting her grandparents.

. . . .

26.    While residing with her grandparents, [appellee] cooked, cleaned, did laundry and did errand running.

. . . .

28.    On various occasions, [appellee] transported her grandparents to either the Loyalsock Dialysis Clinic or the Williamsport facility.

29.    Occasionally, [appellee] transported her grandfather to York, Pennsylvania, to a pain clinic to address pain associated with his spinal stenosis.

30.    [Appellee] primarily used her own mini-van to transport her grandparents.

31.    [Appellee's] grandmother gave [appellee] her bank card to use for the purchase of groceries and other household needs.

32. Health permitting, [appellee's] grandmother accompanied [appellee] when [appellee] was making purchases for the household.

33. Following the purchase of items and use of the bank card, [appellee] would return the receipt to her grandmother.

34. [Appellee's] grandmother authorized [appellee] to use the grandmother's bank card on occasion as [appellee] and her family were living on her husband's disability income.

. . . .

37. During the time [appellee] resided with her grandparents, her grandparents continued to spend their own money and write out some of their own checks.

38. [Appellee's] mother, Carol Paloskey Folkenroth, also participated in spending her parents' monies and writing out checks.

. . . .

40. Following an altercation between [appellee's] husband and [appellant], [appellee] and her family relocated a few days later from the grandparents' residence.

41. [Appellee's] grandmother, Donna C. Paloskey, passed on April 26, 2012.

42. Following [appellee] and her family's relocation from [appellee's] grandparents' home, [appellant] accused [appellee] of stealing various items including the lawn mower.

. . . .

53. During the time [appellee] resided with her grandparents, [appellee] incurred $596.62 in veterinarian bills for her pets that were paid from her grandparents' account.

54. [Appellee] wrote checks out on her grandparents' account, signing the checks as "POA."

. . . .

56. On occasion, [appellee] would purchase prescriptions for herself, her husband and her children through Mountain View Pharmacy on the same bills her grandparents were receiving and paying.

57. [Appellee] placed charges on the Principals' account for a "Realty Tract" subscription at the rate of $49.95 per month.

58. [Appellee] place [sic] charges for her nails on the Principals' credit card.

59. On the date of her grandmother's death, April 23, 2012, [appellee] made purchases on the Principals' credit card in the amount of $182.74 at K-Mart; $49.59 at Dremel's; $27.23 at Big Louie's Pizza; $25.00 for a line of credit payment; and $11.45 at Mountain View Pharmacy.

60. [Appellee], or her family members, purchase [sic] three (3) pornographic movies on the Principals' account which totaled $41.97 in charges.

61. [Appellee] purchased a shamrock light on the Principals' account in the amount of $17.97.

62. [Appellee] purchased items on the Principals' account from A.C. Moore which were for the personal benefit and use of [appellee] in the amount of $227.43.

63. [Appellee] placed charges on the Principals' account for her own vehicle's inspection in the amount of $26.45.

64. [Appellee] has not reimbursed the Principals for any inappropriate charges she made to their credit card account or monies drawn from their checking account.

Trial court opinion, 4/15/16, Findings of Fact Nos. 3-6, 8-9, 20-24, 26, 28-34, 37-38, 40-42, 53-54, 56-64 at 1-8.

The trial court determined that appellee breached her fiduciary duty to the principals by failing to keep her assets separate from the principals' assets, by failing to keep full and complete records of all actions, and by failing to use her powers exclusively for the benefit of the principals. The trial court overruled appellant's exceptions to the accounting in part and sustained them in part. The trial court overruled objections concerning the sale of a lawnmower, the removal of a roto tiller from the principals' residence, the alleged removal of a World War II German officer's dagger from the possession of Edward Paloskey, the alleged removal of two fly rods from the possession of the principals, and an objection regarding appellee's failure to pay the living expenses of her family when they stayed with her grandparents. The trial court also overruled a general objection as to

inaccuracies in the accounting and overruled an objection as moot regarding subpoenas. The trial court sustained an objection regarding appellee charging pornographic movies to the grandparents' account and sustained the objections to the personal property purchased by appellee which was charged to the account of her grandparents which were not related to their needs. The trial court surcharged appellee in the amount of $1,214.43 and ordered appellee to reimburse Clinton County for attorney's fees paid on behalf of appellee. In an amended order, the trial court credited appellee with the amount of attorney's fees for which appellee had already reimbursed Clinton County.

On April 15, 2016, appellant moved for reconsideration which the trial court denied that same day.

On appeal, appellant raises the following issue for this court's review: "Whether the lower court committed an abuse of discretion or error of law in failing to enter judgment for [appellant] for all undocumented expenditures made by [a]ppellee during her tenure as attorney-in-fact for her maternal grandparents?" (Appellant's brief at 8.)

We begin our analysis with our standard of review:

> When an appellant challenges a decree entered by the Orphans' Court, our standard of review "requires that we be deferential to the findings of the Orphans' Court." *In re Estate of Miller*, 18 A.3d 1163, 1169 (Pa.Super.2011) (*en banc*).
>
> > [We] must determine whether the record is free from legal error and the court's

> factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.
>
> *Id.* (alterations and citation omitted). Evaluating the reasonableness of the amount of a surcharge is within the province of a trial court. *In re Wade's Estate*, 343 Pa. 520, 23 A.2d 493, 495 (1942). Absent an abuse of discretion, we will not disturb a trial court's finding. *Id.*

*In re Estate of Brown*, 30 A.3d 1200, 1206 (Pa.Super. 2011).

When a party seeks to recover assets misused by a fiduciary, it is seeking to surcharge the fiduciary. "[I]t is well settled in this Commonwealth that a fiduciary who had negligently caused a loss to an estate may properly be surcharged for the amount of such loss." *Estate of Lohm*, 269 A.2d 451, 454 (Pa. 1970). A surcharge is the penalty imposed for the failure to exercise common prudence, common skill, and common caution in the performance of a fiduciary duty and is imposed in order to compensate beneficiaries for a loss caused by a fiduciary's lack of due care. *In re Estate of Schultheis*, 747 A.2d 918, 927 (Pa.Super. 2000). The objecting party bears the burden of proving wrongdoing on the part of the fiduciary. Once the objecting party establishes evidence of wrongful

conduct, the burden shifts to the fiduciary to prove due care. *Id.* "Where a fiduciary claims credit for disbursements made by him, the burden rests upon the fiduciary to justify them. Proper vouchers or equivalent proof must be produced in support of such credits. Accountant's unsupported testimony is generally insufficient." *Strickler Estate*, 47 A.2d 134, 135 (Pa. 1946).

Appellant contends that he established a *prima facie* showing that appellee engaged in wrongful conduct which shifted the burden to appellee to justify the expenditures. For example, appellant refers to the trial court's Finding of Fact No. 56 in which the trial court found that appellee occasionally purchased prescriptions for her immediate family through Mountain View Pharmacy on the same bills that her grandparents were receiving and paying, but the trial court only surcharged one item for $11.45. Similarly, the trial court found in Finding of Fact No. 64 that appellee had not reimbursed the Principals for any inappropriate charges which she made on their credit card account or on monies drawn from their checking account. Besides those examples, appellant essentially argues that for all expenditures for which appellee could not provide receipts, appellee should be surcharged. According to appellant, the total amount of expenditures by appellee during the period in question was $60,522.32, and the documented expenditures were $7,348.52 which left a balance of $53,173.80 for which appellee should be surcharged.

In its opinion pursuant to Pa.R.A.P. 1925(a) opinion, the trial court explained:

> The Court's Opinion is based specifically on the Findings of Fact contained in the Opinion. It does not appear that the Appellant disputes the Court's recitation of the applicable law but disputes the Court's Findings and application of those Findings to the law. The Appellant's objections were poorly drafted and the Court provided the Appellant numerous opportunities to amend the same.
>
> The Court heard detailed testimony from the Appellee and was satisfied that the Appellee was able to explain and support the disbursements with either documentation or other evidence. As discussed in the Court's Opinion, there were multiple hands in the pot for the matters at issue. Those hands included the Principals, the Co-Power of Attorney, and the Appellee. The Court surcharged the Appellee for each item that the evidence permitted. The Court made a determination regarding the credibility of the evidence, noting that it [did] not have the opportunity to receive testimony from either of the Principals.

Trial court opinion, 5/19/16 at 1-2.

Appellant argues that the only expenditures for which appellee should not be surcharged are those for which checks were written by either of his two parents, his sister who also had power of attorney, and one check written to his attorney for the preparation of deeds. Appellant ignores the fact that the trial court, as fact-finder, found appellee credible with respect to expenditures other than those for which he surcharged appellee when it evaluated the evidence pursuant to **Strickler**. Appellant does not attack the trial court's evaluation of the evidence but just sets forth the broad position

that appellee should be surcharged in the amount of $53,173.80. Appellant has failed to establish that the trial court abused its discretion when it made its credibility determinations or that the trial court committed an error of law in making its legal conclusions.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/25/2017