J-A09044-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| GORDON D. CURTIS AND CHERYL A. CURTIS, LEGAL GUARDIANS OF THE MINOR CHILD LOGAN MICHAEL CURTIS AND ZACHARY AARON CURTIS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| NANCY E. H. CARTER | |
| Appellee | No. 2112 EDA 2013 |

Appeal from the Order February 9, 2012
In the Court of Common Pleas of Pike County
Orphans' Court at No(s): 13-2010 OC

BEFORE:  BOWES, J., OTT, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                **FILED AUGUST 01, 2014**

Gordon Curtis and Cheryl Curtis, legal guardians of the minor children Logan Michael Curtis and Zachary Aaron Curtis (collectively "Appellants"), appeal from the February 9, 2012 Order entered by the Pike County Court of Common Pleas in favor of Nancy Carter ("Carter").  After careful review, we affirm.

The trial court set forth the facts and procedural history of this case as follows:

> The present matter arises out of [Carter's] administration of a testamentary trust created by Edgar F. Wilson and the estates of Edgar and Rita A. Wilson.  [Carter] was named as Executrix of the Estate of Edgar F. Wilson and Trustee of the Testamentary Trust created by Mr. Wilson's will, dated April 28, 1988.  On February 7, 1989, Rita Wilson executed a Power of Attorney naming [Carter] her attorney-in-fact and Mrs. Wilson

later executed a will naming [Carter] as executrix of her estate. In addition, Rita Wilson's will provided that [Carter] would be the sole beneficiary of her estate should Peggy Wilson, Edgar and Rita's daughter, not live to the age of 40. After Edgar's death in 1989 and continuing until Rita's death in 1999, [Carter] administered the trust for the benefit of Rita Wilson, using her discretion as trustee to sell some of the estate properties to produce income for the trust. After Rita Wilson's death, her estate was probated in Pike County.

On March 23, 2010[,] [Appellants] initiated an action against [Carter] on behalf of Logan Michael Curtis and Zachary Aaron Curtis, the then-minor grandchildren of the decedents. The Petition and Amended Petition, filed August 1, 2011[1], alleged that [Carter] breached her fiduciary duty and engaged in self-dealing both in acting as Trustee and in administering the estates of the Wilsons. [Appellants] asked this [c]ourt to require [Carter] to provide a full and final accounting of all assets in the Estate[s] of Edgar Wilson and Rita Wilson; impose an interim constructive Trust, order disgorgement of monies and properties, and administer the [E]state of Edgar Wilson for the benefit of the grandchildren; or alternatively, to remove [Carter] as Executrix of the estates of Edgar and Rita Wilson.

Specifically, [Appellants] alleged self-dealing in relation to the sale of lands known as the "Wilson Swamp" to Albert and Evelyn Haldaman; the "Campground" purchased by [Carter] with court approval by Order dated June 15, 1993; and disposition of several other small parcels owned by Edgar and Rita Wilson. [Appellants] also took issue with pre-payment of a mortgage taken by [Carter] for purchase of the "Campground" property. [Appellants] complain that Logan Michael Curtis and Zachary Aaron Curtis were entitled to notice of the probate of the Estate of Rita Wilson. Finally, [Appellants] challenged [Carter's] receipt of an Annuity payment that named Rita Wilson as designated beneficiary and ultimately flowed to Mrs. Wilson's estate, where [Carter] took as sole beneficiary under Rita Wilson's will.

After careful consideration of [Appellants'] Petition, [Carter's] Answer and New Matter, and a full hearing on the matter, this [c]ourt issued a very detailed Order with specific

_____

[1] Hereinafter referred to collectively as "the Petition".

findings of fact and legal conclusions on February 9, 2012, entering judgment on behalf of [Carter] and dismissing [Appellants'] Complaint. Due to a clerical error by the Prothonotary, counsel for the parties involved did not receive notice of the above order until June 12, 2013. At that time, [Appellants] petitioned for Leave to File an Appeal Nunc Pro Tunc, which was granted by this [c]ourt after a hearing on the matter. [Appellants] filed a Notice of Appeal on July 26, 2013.

Trial Court Pa.R.A.P. 1925(a) Opinion, September 17, 2013 ("1925(a) Opinion"), at 1-3.

Appellants raise the following claims of error:

1. Did the [c]ourt err in limiting the testimony of [Appellants'] expert witness, a residential appraiser[,] as to the value of a parcel consisting of 69 acres more or less which was sold to [Carter's] parents, limiting that testimony to only the size and valuation of the parcel in the year it was sold, when the parcel was acknowledged to be 69 acres, was held in trust for the benefit of the two minor children, and when the Trust has not yet been closed as admitted by [Carter]?

2. Did the [c]ourt err in ruling that the filing of the Letters Testamentary in Pike County for Rita Wilson, a resident of Lehigh County was proper notwithstanding the fact that [Carter] acknowledged that Rita Wilson resided in Lehigh County for five years and died in Lehigh County, a fact also known to [Carter's] attorney?

3. Did the [c]ourt err in finding that the instant petition challenging the propriety of the Notices of Beneficiary Interest in the Estate of Rita A. Wilson was untimely in that it was un-refuted that no notice was sent to Beneficiaries as defined by Rule and Law other than to [Carter] herself?

4. Did the [c]ourt err in ascribing knowledge of probate proceedings in Pike County to [Appellants], residents of Florida[,] based on the purported knowledge of a third party, who testified that he never received notice of any probate proceedings and which testimony was unrefuted?

5. Did the [c]ourt err in not applying the statutory provision prohibiting self-dealing and conflicts of interest to [Carter] who

conveyed assets out of the Testamentary Trust[] to herself and her husband and her parents when she admitted that she was a fiduciary and trustee of a Trust beneficiaries of which were the minor children?

6. Did the [c]ourt err in holding that a mortgage created by [Carter] for the benefit of her and her husband could properly alter the provisions of a Court Order approving such sale, which Court Order imposed specific terms and conditions for the mortgage, when that Court Order was never modified?

7. Are the Findings of Fact unsupported by the testimony and/or evidence presented at Trial?

8. Are the Conclusions of Law unsupported by the testimony and/or evidence presented at Trial and contrary to Statutes and/or Rules?

9. Are the factual conclusions set forth in the Memorandum Opinion unsupported by the Testimony and/or evidence presented at Trial and contrary to the law?

10. Did the [c]ourt err in failing to consider that the ultimate disposition of all assets or nearly all of the assets of the Testamentary Trust and Estate went to the benefit of either [Carter] who was admittedly a Fiduciary or her family members?

Appellants' Brief, pp. 6-8. Otherwise stated, Appellants claim that the trial court erred by: (1) limiting Appellants' expert property appraiser's testimony; (2) allowing the decedent's estate to be probated in Pike County; (3) determining the petition challenging the probate was untimely because the minor alleged-beneficiaries received no notice; (4) ascribing knowledge of the probate proceedings to Appellants through a third party; (5) not determining that Carter had engaged in self-dealing; (6) ruling a mortgage created for the benefit of Carter and her husband did not violate a previous

court order; and (7) failing to consider that nearly all of the assets of the estates ultimately went to Carter and her family.[2]  All of these claims relate to Carter's handling of the estates and testamentary trust, the probate process, and the trial court's handling of, and determinations resulting from, the hearing it held on the underlying claims of Carter's malfeasance.

When an appellant challenges a decree entered by the Orphans' Court, our standard of review "requires that we be deferential to the findings of the Orphans' Court."  *In re Estate of Miller*, 18 A.3d 1163, 1169 (Pa.Super.2011) (*en banc*).

> [We] must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

*Id.* (alterations and citation omitted).

_____

[2] Appellants' numbered issues 7 & 8 allege that the record did not support either the lower court's findings of fact and/or the conclusions of law stated in the February 9, 2012 Order dismissing Appellants' claims.  These claims are general restatements of the more specific claims previously raised. Likewise, Appellants' ninth issue again simply broadly restates the issues raised, this time in terms of the lower court's Memorandum Opinion that accompanied the findings of fact and conclusions of law.

A review of the terms of the Last Will and Testament of Rita Ann Wilson ("the Will") will aid in the disposition of this appeal. Ms. Wilson executed the Will on December 29, 1990. *See* Will, p. 4. The Will bequeaths all estate assets to Ms. Wilson's daughter, Peggy Lynn Wilson, a.k.a. Peggy Curtis. *See id.* at p. 1, Item II. However, the Will further provides as follows:

> E. In the event that my daughter, PEGGY LYNN WILSON, is deceased prior to reaching forty (40) years of age, then I give, devise and bequeath my entire estate unto NANCY CARTER of Greentown, Pennsylvania, the same to be hers absolutely and forever.

*See id.* at p. 2, Item II(E). The Will also appointed Carter as Executrix and Trustee under the Will, and granted Carter all the necessary powers to execute the duties of those positions.[3] *See id.* at p. 2, Items III-IV.

The record further reveals that Peggy Wilson, the mother of Logan Michael Curtis and Zachary Aaron Curtis, died on July 26, 1997, prior to reaching forty years of age. *See* Petition, pp. 2, 3; N.T. 8/1/2011, pp. 12, 14-15; N.T. 12/7/2011, pp. 108-109. Therefore, under the express terms of the Will, the entirety of Rita Wilson's estate passed to Carter as the sole testamentary beneficiary upon Rita Wilson's death on July 26, 1999. Accordingly, the only notice required to probate the will was to Carter, the

_____

[3] Ms. Wilson had already executed an Irrevocable Power of Attorney naming Carter her attorney on February 7, 1989. *See* Power of Attorney appended to Petition; N.T. 8/1/2011, pp. 10-11, 53.

only named beneficiary. *See* 231 Pa.Code § 5.6 (regarding notice required to probate estates).

We note that, had Rita Wilson died without a will, Logan Michael Curtis and Zachary Aaron Curtis would have stood to divide her estate *per stirpes* as the surviving issue of Rita Wilson's issue, Peggy Wilson, under intestacy principles.[4] *See* 20 Pa.C.S. § 2101 *et seq*.; 20 Pa.C.S. § 2514. Further, had a challenge been timely filed, they would have had standing to challenge the validity of the Will as possible intestate beneficiaries. *See* 20 Pa.C.S. § 908(a) (a party in interest has one year to appeal probate); 20 Pa.C.S. § 2103 (non-spouse intestate successors). However, in addition to being filed over a decade after the period in which a challenge to the validity of the Will could have been timely filed, the Petition filed on behalf of Peggy Wilson's two minor sons on March 23, 2010, does not challenge the Will's validity.[5] Instead, the Petition merely takes exception with many of Carter's decisions and actions as Executrix, Trustee, and in her capacity as Power of Attorney

_____

[4] We additionally note that had Peggy Wilson reached the age of forty prior to her death, the estate would then have passed to her children under anti-lapse principles. *See* 20 Pa.C.S. § 2514. However, because Peggy Wilson died before her fortieth birthday, and the Will provided an alternate testamentary structure in the event of such death, anti-lapse plays no part in our determination of this appeal. *See Estate of Kehler*, 411 A.2d 748, 750 (Pa.1980) (contrary intent that appears with reasonable certainty in will overcomes operation of the anti-lapse statute); *see also* 20 Pa.C.S. § 2514.

[5] In fact, the Petition alleges that Carter "improperly interpreted" the Will. *See* Petition, p. 4, ¶ 25. Logically, this allegation concedes the Will's validity.

acting on behalf of Rita Wilson, and requests surcharges and the removal of Carter as Executrix. ***See generally***, Petition. As non-beneficiaries under the terms of the Will, Appellants have no standing to bring such challenges. Appellants properly suggest that, following an appropriate hearing, the possible remedies for such alleged malfeasance would include surcharging the executor and/or relieving the named executor of the duties and functions of the position. ***See*** 20 Pa.C.S. § 3182 (removal of executor); ***In re Dobson's Estate***, 417 A.2d 138, 142 (Pa.1980) ("(s)urcharge is the penalty for failure to exercise common prudence, common skill and common caution in the performance of the fiduciary's duty and is imposed to compensate beneficiaries for loss caused by the fiduciary's want of due care."). However, even if they had standing, these remedies would not provide Appellants relief.

Here, even assuming the alleged malfeasance occurred, surcharging Carter and requiring her to pay the estate back would serve no purpose: she is the sole beneficiary of the estate. Further, any malfeasance on Carter's part would only have diminished the value of assets to which she was ultimately exclusively entitled. Accordingly, Carter's alleged mismanagement of the estate, to the extent any actually happened, would have benefitted or harmed only her own future interest. Otherwise stated, Appellants can demonstrate no harm from Carter's actions. In any event, the record supports the trial court's observation that: "the evidence presented establishes that Nancy Carter undertook difficult responsibilities as

both Executor and Trustee for Edgar Wilson and Rita Wilson and over a period of 20 years worked to perform those duties properly." Trial Court February 9, 2012 Order, p. 9; *see also generally*, N.T. 8/1/2011; N.T. 12/7/2011.

Because we agree with the trial court that Carter was the sole beneficiary of the Estate of Rita Wilson under the express terms of the Will,[6] we find the trial court correctly dismissed Appellants' Complaint.[7] To the extent examination of any of Appellants' issues is merited or warranted, we adopt and rely on the well-reasoned September 17, 2013 Pa.R.A.P. 1925(a) Opinion of the trial court and the February 9, 2012 Order, Findings of Fact, Conclusions of Law, and Memorandum incorporated by the 1925(a) Opinion and upon which it is based.[8]

Order affirmed.

---

[6] *See Commonwealth v. Clemens*, 66 A.3d 373, 381 n.6 (Pa.Super.2013) ("This [C]ourt may affirm [the lower court] for any reason, including such reasons not considered by the lower court.").

[7] To the extent Appellants' claims stem from the trust created by Edgar Wilson's will, such trust was not proper subject matter regarding challenges to the administration of the Estate of Rita Wilson. We further note that Carter actually distributed the entire principal of that contested Edgar Wilson Trust to a third party for the benefit of Logan Curtis and Zachary Curtis, despite the fact that a portion of this principal should have been distributed to Rita Wilson's estate, of which Carter was the sole beneficiary. *See* N.T. 8/1/2011, pp. 54-55, 99-100, 103; N.T. 12/7/2011, pp. 18, 46-47, 192-194.

[8] Further, any errors in the trial court's rulings on Appellants' issues would be harmless for the reasons stated, *supra*.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/1/2014</u>

IN THE COURT OF COMMON PLEAS OF
PIKE COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

GORDON D. CURTIS and                    :
CHERYL A. CURTIS, legal                 :
guardians of the minor child            :
LOGAN MICHAELCURTIS and·                :
ZACHARY AARON CURTIS,                    :
                                        :
                    Appellants          :
v.                                      :            No. 13-2010 OC
                                        :
NANCY E. H. CARTER,                     :
                                        :
                    Appellee            :
                                        :

---

OPINION SUBMITTED PURSUANT TO PENNSYLVANIA RULE OF APPELLATE
PROCEDURE 1925

AND NOW, this *17th* day of *September*, 2013 after careful review of the record,

we continue to stand by our decision and respectfully request the Superior Court to uphold our

Order dated February 9, 2012, ordering judgment on behalf of the Defendant and dismissing

the Complaint. This Court would also like to add, pursuant to Pennsylvania Rule of Appellate

Procedure 1925, the following:

## I.  FACTUAL AND PROCEDURAL HISTORY

The present matter arises out of Nancy E.H. Carter's administration of a testamentary

trust created by Edgar F. Wilson and the estates of Edgar and Rita A. Wilson. Nancy Carter

was named as Executrix of the Estate of Edgar F. Wilson and Trustee of the Testamentary

Trust created by Mr. Wilson's will, dated April 28, 1988. On February 7, 1989, Rita Wilson

executed a Power of Attorney naming Nancy Carter her attorney-in-fact and Mrs. Wilson

later executed a will naming Nancy Carter as executrix of her estate. In addition, Rita Wilson's will provided that Nancy Carter would be the sole beneficiary of her estate should Peggy Wilson, Edgar and Rita's daughter, not live to the age of 40. After Edgar's death in 1989 and continuing until Rita's death in 1999, Nancy Carter administered the trust for the benefit of Rita Wilson, using her discretion as trustee to sell some of the estate properties to produce income for the trust. After Rita Wilson's death, her estate was probated in Pike County.

On March 23, 2010 Gordon D. Curtis and Cheryl A. Curtis initiated an action against Nancy Carter on behalf of Logan Michael Curtis and Zachary Aaron Curtis, the then-minor grandchildren of the decedents. The Petition and Amended Petition, filed August 1, 2011, alleged that Nancy Carter breached her fiduciary duty and engaged in self-dealing both in acting as Trustee and in administering the estates of the Wilsons. Plaintiffs asked this Court to require Nancy Carter to provide a full and final accounting of all assets in the Estate of Edgar Wilson and Rita Wilson; impose an interim constructive Trust, order disgorgement of monies and properties, and administer the estate of Edgar Wilson for the benefit of the grandchildren; or alternatively, to remove Nancy Carter as Executrix of the estates of Edgar and Rita Wilson.

Specifically, Plaintiffs alleged self-dealing in relation to the sale of lands known as the "Wilson Swamp" to Albert and Evelyn Haldaman; the "Campground" purchased by Nancy Carter with court approval by Order dated June 15, 1993; and disposition of several other small parcels owned by Edgar and Rita Wilson. Plaintiffs also took issue with pre-payment of a mortgage taken by Nancy Carter for purchase of the "Campground" property. Plaintiffs complain that Logan Michael Curtis and Zachary Aaron Curtis were entitled to

2

notice of the probate of the Estate of Rita Wilson. Finally, Plaintiffs challenged Nancy Carter's receipt of an Annuity payment that named Rita Wilson as designated beneficiary and ultimately flowed to Mrs. Wilson's estate, where Nancy Carter took as sole beneficiary under Rita Wilson's will.

After careful consideration of Plaintiff's Petition, Defendant's Answer and New Matter, and a full hearing on the matter, this Court issued a very detailed Order with specific findings of fact and legal conclusions on February 9, 2012, entering judgment on behalf of the Defendant and dismissing Plaintiff's Complaint. Due to a clerical error by the Prothonotary, counsel for the parties involved did not receive notice of the above order until June 12, 2013. At that time, Plaintiffs petitioned for Leave to File an Appeal Nunc Pro Tunc, which was granted by this Court after a hearing on the matter. Plaintiffs filed a Notice of Appeal on July 26, 2013.

Plaintiff now raises the following arguments:

1. Whether the Court erred in limiting the testimony of Plaintiff's expert witness as to the value of the parcels of land, prejudicing Plaintiffs at the time of trial.

2. Whether the Court erred in not considering the fact that Rita Wilson resided in Lehigh County prior to her death and despite this fact, did not find that Pike County was an improper venue to file the Estate.

3. Whether the Court erred in finding that the challenge to the will of Rita Wilson was untimely due to lack of notice to Plaintiffs.

4. Whether the Court erred in ascribing knowledge of any probate proceeding to the Plaintiffs.

5. Whether the court erred in ascribing knowledge of any probate proceeding to Carl Rinker.

6. Whether the Court erred in not applying the Statutory Provisions prohibiting self-dealing and conflicts of interest to the Defendant.

7. Whether the Court erred in holding the absence of a provision in a mortgage created by

3

the Defendant for the benefit of her parents could alter the provisions of a Court Order approving sale of property.

8. Whether specific Findings of Fact are unsupported or contradicted by the testimony: Numbers 15, 19, 21, 23, 25, 26, and 33.

9. Whether specific Conclusions of Law are unsupported by the facts and contrary to statute: Numbers 6, 7, 10, 11, 13, 17, 18, and 22.

10. Whether the Court's Memorandum Opinion is unsupported by the facts and contrary to the law on these matters:

    a. That expenses of Rita Wilson were paid by the Defendant when she lived with family members in Lehigh County during her last years.

    b. That the absence of a provision in a mortgage created by the Defendant could alter the provisions of a Court Order setting forth terms and conditions of the mortgage.

    c. That there was no ratification or approval on the part of the Defendant as to the distribution of the annuity in question when she knew that the tax consequences were not being borne by herself or the estate.

11. Whether the Court erred in failing to consider that assets went to benefit the Defendant or her family members.

## II. DISCUSSION

### A. The Court Did Not Err in Limiting Plaintiff's Expert's Testimony

As a preliminary matter, Pa. R.A.P. 1925 requires Appellants to allege the precise matters complained of in their Concise Statement. "[T]his Court may find waiver where a concise statement is too vague. 'When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review.'" *In the Interest A.B.*, 63 A.3d 345, 350 (Pa. Super. Ct. 2013) (quoting *Commonwealth v. Dowling*, 778 A.2d 683, 686 (Pa. Super. Ct. 2001)). In paragraph 1 of their Concise Statement Plaintiffs refer to "parcels of land." There were several parcels of land discussed during this litigation. Assuming Plaintiffs are referencing the testimony regarding the Wilson Swamplands, the Court was correct in hearing

4

only testimony as to the size and value of the property.

Pursuant to Pa. R.E. Rule 702 an expert's testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." Here, the issue surrounding the Wilson Swamplands was the disputed size of the property and the value of the property when it was sold. Plaintiffs contended that Nancy Carter caused the property to be sold at less than $500 per acre in violation of a 1988 agreement between Edgar and Rita Wilson and Albert and Evelyn Haldaman. *See* Exhibit P-21. The Defendant argued that the property was indeed sold at above $500 per acre pursuant to the aforementioned agreement. Despite the fact that a signed agreement for sale of the land between the Wilsons and Haldamans existed prior to the death of either Edgar or Rita Wilson, Plaintiffs sought to introduce testimony dealing with the validity of the sale. *See* N.T. pp. 77-83 (December 7, 2011). After counsel for Defendant objected to the relevance of such testimony, the Court limited the expert testimony to the actual size of the property and the estimated value at or around the time of sale; thus narrowing the scope of the testimony to help determine those facts actually in issue. *See* N.T. pp. 82-83 (December 7, 2011). Such limitation was proper under Pennsylvania Rules of Evidence.

B.  Challenge to the Venue of Probate of Rita Wilson's Estate is Untimely

Plaintiffs argue that the court erred in failing to consider whether Pike County was the proper venue to probate the estate of Rita Wilson. A challenge as to whether the estate should have been filed in Pike County was not properly before the Court. Under Pennsylvania law as set forth in 20 Pa. C.S. § 908, "Any party in interest seeking to challenge the probate of a will or who is otherwise aggrieved by a decree of the register ... may appeal therefrom to the court *within one year* of the decree..." (emphasis added). Rita Wilson's Will was probated in 2001.

5

The period to challenge the venue lapsed in 2002. The court was under no duty to address this issue in a case filed in March 2010.

C. Plaintiffs Were Not Entitled to Notice of Beneficial Interest in Rita Wilson's Estate

Pennsylvania Orphans' Court Rules only require notice of estate administration be sent to "every person, corporation, association, entity or other party *named in decedent's will* as an *outright beneficiary* whether individually or as a class member." *See* Pa. Orph.Ct.R. 5.6(a)(1) (emphasis added). In arguing that Logan Michael Curtis and Zachary Aaron Curtis were entitled to notice, Plaintiffs seem to overlook the plain language of paragraph (a)(1) that requires notice to "outright" beneficiaries "named in decedent's will."

Moreover, Plaintiffs have no ground upon which to argue that Rita Wilson's will is in any way ambiguous or does not dispose of her entire estate, which would entitle the grandchildren to notice as possible intestate heirs. "Principles governing the interpretation of a will are well settled. One of these is that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain." *In re Estate of Baker*, 434 A.2d 1213, 1214 (Pa. 1981). The language in the Last Will and Testament of Rita Ann Wilson is clear and unambiguous:

> In the event that my daughter, Peggy Lynn Wilson, is deceased prior to reaching forty (40) years of age, then I give, devise and bequeath my entire estate unto NANCY CARTER of Greentown, Pennsylvania, the same to be hers absolutely and forever.

Exhibit P-3 ¶ E. Notice was properly given to Nancy Carter as sole beneficiary of Rita Wilson's estate,[1] which is in conformity with the requirements of Pennsylvania Code.

---

[1] *See* Exhibit P-7, *Notice of Beneficial Interest in Estate.*

6

D. The Court Did Not Err in Ascribing Knowledge of Probate Proceedings to Plaintiff

The only knowledge ascribed to Plaintiffs by the Court was that Plaintiffs were aware of appointment of Nancy Carter as Executrix of the Estate of Rita Wilson, having had notice of Rita Wilson's death. *See Order of February 9, 2012* pg. 6 ¶ 6. During the proceedings Gordon Curtis testified that he was aware of Rita Wilson's death. *See* N.T. pg. 27 (December 7, 2011). The Court also heard testimony from Roger Rinker, who had been in contact with Plaintiffs, stating that he learned that Ms. Carter was the Executrix of Rita Wilson's Estate. *See* N.T. pg. 47 (December 7, 2011). Defendant testified that in 1999, shortly after Rita Wilson's death, she received a copy of correspondence between Gordon Curtis and Roger Rinker. *See* N.T. pg. 154 (December 7, 2011). Having heard evidence that Roger Rinker was aware of Ms. Carter's appointment as Executrix and that Roger Rinker and Gordon Curtis were in contact about these matters in 1999, it is not unreasonable to assume that Plaintiffs had knowledge of Ms. Curtis' appointment, or alternatively, had access to this information and did nothing to pursue a will contest at that time.

E. Plaintiff's Paragraph 5 of the Concise Statement Should be Waived for Failure to Properly Specify Error

"[I]t is well-established that 'Appellant's concise statement must properly specify the error to be addressed on appeal.'" *In the Interest A.B.*, 63 A.3d 345, 350 (Pa. Super. Ct. 2013) (quoting *Commonwealth v. Hansley*, 24 A.3d 410, 415 (Pa. Super. 2011)). Paragraph 5 of Plaintiffs' Concise Statement, which complains that the court erred in ascribing knowledge of any probate proceeding to Carl Rinker should be stricken. Nowhere in its Order of February 9, 2012 did the Court ascribe knowledge to Carl Rinker. Furthermore, Carl Rinker did not testify at the proceeding, as he passed away in October, 1997. *See* N.T. pg. 44 (December 7, 2011).

7

The Court cannot meaningfully respond to Plaintiff's paragraph 5.

F.  Plaintiffs Did Not Offer Evidence to Prove That Defendant Breached her Fiduciary Duty

Plaintiffs bore the burden of proving that Defendant was engaged in self-dealing in breach of her fiduciary duty. Plaintiff's Complaint alleged breach of duty in nearly every decision Nancy Carter made as Trustee and Executrix of the Estates of Edgar and Rita Wilson, but Plaintiffs failed to provide even minimal evidence to support these claims. Despite Plaintiff's bare allegations that Ms. Carter was somehow engaged in self-dealing, the evidence reveals that Defendant was careful in managing the Trust and Estates of the Wilsons and diligently documented the financial status of the various accounts. The Court found Defendant's testimony credible in that she undertook the responsibility of administering a Trust, which originally had no income, and utilized assets to generate income for the benefit of Rita Wilson. *See* N.T. pp. 113, 139 (December 7, 2011). Ms. Carter sought legal advice when confronted with difficult issues[2] and she retained accountants to assist in managing the estate.[3] Additionally, Defendant sought and gained Court approval for the sale of real estate that appeared to be a conflict of interest. *See* Exhibit P-13. The facts of this case clearly did not support a finding of breach of fiduciary duty on Defendants part.[4]

G.  The Court Correctly Found That Defendant Properly Paid Off the Mortgage on the Campground Property in the Absence of a Prohibition Against Pre-payment

Once again, under Pa. R.A.P. 1925 the Court may find waiver where the matters

---

[2] Defendant testified that she sought advice concerning administration of the estates, trust, property sales, and annuity from Attorney Arthur Ridley, the attorney that prepared the wills of both Edgar and Rita Wilson. *See* N.T. pp. 111, 121, 127-28, 142, 157, 164, and 184 (December 7, 2011).
[3] *See* N.T. pp. 135-36 (December 7, 2011).
[4] For further discussion *See* § C *supra*, and §§ G, H *infra*.

8

complained of are too vague or imprecise to allow the court to form an adequate response. *See In the Interest A.B.*, 63 A.3d 345. Here Plaintiffs complain that the Court erred in holding "the absence of a provision in a mortgage created by the Defendant for the benefit of her parents could alter the provisions of a Court Order approving sale of property..." To the Court's knowledge there was no discussion of a Court Order relating to the provisions of a mortgage created by Defendant for her parents, Albert and Evelyn Haldaman, and there is certainly no such Order in the record. In fact, the only Order in the record dealing with a mortgage of any kind is the Order of June 15, 1993, which grants Defendant's Petition to purchase the Campground property for herself and her husband. The provisions of this Order and the mortgage related thereto do not involve or benefit Albert and Evelyn Haldaman.

Assuming, however, that Plaintiffs are referencing the Order authorizing the Campground sale, they mischaracterizes the Court's findings. At no point in the Court's Order of February 9th, 2012, did the Court claim that Defendant could alter the provisions of an earlier Court Order. The Court found simply that no documents relating to the mortgage of the Campground property prohibited pre-payment:

> Neither the Order of June 15, 1993 authorizing the purchase of the property, the mortgage executed subsequent thereto, or any document related to the mortgage payments or satisfaction of the mortgage contained a clause prohibiting pre-payment or authorizing the imposition of a pre-payment penalty.

*Order of February 9, 2012* pg. 4.

"Generally, where a mortgage note is silent as to the right of prepayment, there arises a presumption the debt may be prepaid." *Citicorp Mortgage v. Morrisville Hampton Village Realty Ltd. Partnership*, 662 A.2d 1120, 1122 (Pa. Super. Ct. 1995). None of the aforementioned documents contain a prohibition on prepayment or related fees,[5] so the Court

---

[5] *See* Exhibits P-13, *Order of Court and Petition to Sell Real Property to Trustee*; and P-12, *Mortgage*

rightly found that Defendant could prepay the mortgage. Furthermore, the Petition to Sell Real Property made clear that the purpose of the sale of the property was to generate income for the benefit of Rita Wilson. *See* Exhibit P-13. The mortgage was not satisfied until after Rita Wilson's death, thus it fulfilled the stated purpose. *See* Exhibit P-14, *Mortgage Satisfaction Piece.*

H. The Court's Findings of Fact Are Supported by the Evidence

Plaintiffs complain that the Court's factual findings numbered: 15, 19, 21, 23, 25, 26, and 33 are unsupported by the evidence. All allegations that the Court's Finding of Facts are contrary to the evidence are entirely without merit.

The standard in reviewing the trial court's factual findings is well settled: "Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses, and on review, we will not reverse its credibility determinations absent an abuse of discretion." *In re Estate of Cruciani*, 986 A.2d 853, 855 (Pa. Super. Ct. 2009) (quoting *In Re: Estate of Presutti*, 783 A.2d 803, 805 (Pa. Super. 2001)). "We [may] reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record. As fact finder, the judge has the authority to weight the testimony of each party's witnesses and to decide which are most credible." *Parker Oil Co. v. Mico Petro & Heating Oil, LLC,* 979 A.2d 854, 856 (Pa. Super. Ct. 2009) (quoting *Skurnowicz v. Lucci,* 798 A.2d 788, 793 (Pa. Super. 2002)).

Finding of Fact #15 states: "From 1989 to 1999 Nancy Carter performed her duties as Executor and Trustee of the estate of Edgar Wilson for the benefit of Rita Wilson." *Order of February 9, 2012* pg. 2. This is supported by the testimony of Nancy Carter that during the ten-year period she "...took care of whatever Trust assets that were available for the benefit

10

of ...[her] Aunt, Rita Wilson." N.T. 2 pg. 112 (December 7, 2011). As finder of fact, this Court was well within its authority to weigh this testimony and decide whether it was credible. This finding should not be disturbed on appeal.

Finding of Fact # 19 is as follows: "The designated purchase price set forth in aforementioned Agreement [Agreement of Sale of the "Wilson Swamplands"] was 'not less than $500.00 per acre and not more than $1,500.00 per acre as deemed fair for each parcel by Executrix/ Trust Administrator (Nancy E.H. Carter) of Estate of Edgar Wilson as established in Trust for Rita Wilson (and/or Peggy Wilson).'" *Order of February 9, 2012* pg. 3. This was indeed the designated purchase price, this language having been taken directly from the signed agreement between Edgar and Rita Wilson and Albert and Evelyn Haldaman dated December 20, 1988. *See* Exhibit P-21. Because there is documentary evidence to support this finding, Plaintiff has no basis by which to appeal it. Similarly, Finding of Fact #21 merely states that the purchasers under the agreement were Albert and Evelyn Haldaman, a fact also evidenced by Exhibit P-21.

Plaintiffs further object to Findings of Fact #23, 25, and 26, all relating to the sale of the "Wilson Swamplands." Finding #23 states: "In 1993 ...Nancy Carter petitioned the Court for approval to sell the Campground to Nancy Carter for $50,400.00 in order to provide income to the Trust of Edgar Wilson to benefit his widow, Rita Wilson." *Order of February 9, 2012* pg. 4. Finding #25 states that the proposed sale was approved by Order of President Judge Harold A. Thomson, Jr. on June 15, 1993. *See Id.* pg. 4. Finding #27 says that "$47,000.00 of the purchase price would be secured by a mortgage with interest at the rate of nine percent (9%) per annum and payable over 25 years," and that the purpose of the mortgage was to provide additional monthly income to the trust. *Id.* Again, Plaintiffs have

11

no grounds upon which to contest these findings, as the June 15, 1993 Court Order signed by President Judge Harold A. Thomson, Jr. with attached Petition to Sell Real Property to the Trustee was admitted as Exhibit P-13 during the hearing. The petition states that "Petitioner desires to purchase the 8.94 acre parcel from the Edgar Wilson testamentary Trust for the purchase price of Fifty Thousand Four Hundred ($50,400.00) Dollars." Exhibit P-13. It further states "That the Edgar Wilson Trust shall hold the mortgage on the said parcel in the sum of Forty Seven Thousand ($47,000.00) Dollars at an interest rate of nine percent (9%) per annum for a period of twenty five (25) years." *Id.* Paragraph seven of the petition provides, "That the transaction will provide monthly income to the Trust…which said income is needed by the Trustee to use for the benefit of Edgar Wilson's widow, Rita Wilson." *Id.*

Finally, Plaintiffs object to Finding of Fact #33: "While testimony was elicited regarding the intent of Carl Rinker, great grandparent of Logan and Zachary Curtis, to benefit those children by the Annuity no reliable evidence was presented to substantiate those statements." *Order of February 9, 2012* pg. 5. Again, it is within the trial court's discretion to weigh the credibility of each parties' witnesses. Here, Plaintiffs offered no additional evidence to support the claim that the Annuity was to benefit the children. To the contrary, the majority of evidence presented weighed against this assertion, including that the Designated Beneficiary of the Annuity was Rita Wilson and the Sole Beneficiary of Rita Wilson's estate was Nancy Carter.[6]

---

[6] *See* Exhibit D-3 *Letter from Prudential to Roger A. Rinker;* Exhibit D-5 *Prudential Annuity Check Statement;* and Exhibit P-3 *Last Will and Testament of Rita Ann Wilson.*

12

I. Plaintiff's Paragraph 9 is Redundant, as all Issues Have Been Previously Addressed

Plaintiffs complain that the Court's Conclusions of Law numbered: 6, 7, 10, 11, 13, 17, 18, and 22 are unsupported by the evidence or contrary to the law. Concerning waiver of issues in a Concise Statement, Pa. R.A.P. 1925 (b)(4)(iv) provides "The Statement should not be redundant." All of the errors addressed in paragraph 9 of Plaintiffs Concise Statement are redundant and have previously been addressed by the Court.[7]

J. The Court's Memorandum Opinion is Supported by the Facts and in Conformity with the Law

Plaintiff's assertion that the Memorandum Opinion erred in stating "expenses of Rita Wilson were paid by the defendant when she lived with family members in Lehigh County during her last years" is simply unsupportable. Nowhere in the Order of February 9, 2012 does the Court address payment of Rita Wilson's expenses during her last years. The only evidence before the Court was that Nancy Carter diligently worked as Trustee during the latter part of Rita Wilson's life to ensure that her aunt had sufficient income. The Court can provide no further response to paragraph 10 section (a) of Plaintiff's Concise Statement, as it mischaracterizes the Court's Opinion.

Paragraph 10 section (b) of Plaintiffs Concise Statement is redundant and this issue was previously addressed in section G of this Opinion.

"[A]n appellate court does not sit to review questions that were neither raised, tried, nor considered by the trial court." *Harber Philadelphia Ctr. City Office v. LPCI*, 764 A.2d

---

[7] For Conclusions of Law #6 and 13, *See* § D *supra*; #7, *See* §§ A, F, and H *supra*; #10, *See* § H supra; #11, *See* § B *supra*; #17, 18, and 22, *See* § F *supra*.

13

1100, 1104 (Pa. Super. Ct. 2000) (quoting *Dollar Bank v. Swartz*, 657 A.2d 1242, 1245 (Pa. 1995)). Paragraph 10 section (c) of Plaintiff's Concise Statement alleges error surrounding the issue of tax consequences as to the distribution of the annuity. This is not an appropriate issue for appeal because, as the Court pointed out in its Memorandum Opinion, "Any propriety of these claims is not presently before the Court since one involves a claim that Carl Rinker, not a party to this proceeding, actually paid the income tax on the Annuity income." *Order of February 9, 2012* pg. 12. The Court could not at that point and cannot now address an issue involving a third party who was not a party to these proceedings.

K. There is no Evidence to Support a Finding of Breach of Fiduciary Duty Despite Assets Having Gone to Defendant and/or Her Family Members

As discussed in section F above, the court carefully scrutinized the evidence and considered the relationships of the parties in concluding that there was no factual support for the claim that Nancy Carter breached her duty as a fiduciary. As factfinder the Court concluded that the transfer of assets from the Estate of Edgar Wilson to Defendant or her parents was done in an effort to provide funds to Rita Wilson after her husband's death. Moreover, all transfers of real estate between the Estate and Defendant or her parents were executed with complete transparency, and in the case of the Haldamans, prior approval of the decedents. There is simply no merit to the argument that in gaining some of the assets of Edgar Wilson's Estate, Defendant breached her fiduciary duty.

14

III. CONCLUSION

The evidence on the record is sufficient to support the adjudication, we respectfully request the Superior Court to uphold our Order of February 9, 2012.

BY THE COURT

_____
HON. JOSEPH F. KAMEEN, P.J.

cc: Jan S. Lokuta, Esq.
    Joseph R. Rydzewski, Esq.
    Pennsylvania Superior Court

jb

15